UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PIETOSO, INC. d/b/a CAFÉ NAPOLI, | ) |
| Plaintiff, | ) No. 4:19-CV-397 RLW |
| v. | ) |
| REPUBLIC SERVICES, INC. | ) |
| and | ) |
| ALLIED WASTE SERVICES, LLC d/b/a ALLIED WASTE SERVICES OF BRIDGETON, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 23). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Pietoso, Inc. d/b/a Café Napoli ("Pietoso") brings this action as a putative nationwide class action for breach of contract and declaratory judgment. (First Amended Complaint ("FAC"), ECF No. 19). On or around April 26, 2011, Defendants entered into a contract ("Service Agreement") with Pietoso. (FAC, ¶¶1, 7, 21 (citing the Service Agreement at

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

Exhibit 1)). The service charges were increased by Republic on a regular basis. (FAC, ¶46). The increases in Service Charges were presented on the invoice as authorized service charge increases. (FAC, ¶47). Pietoso argues that Defendants improperly increased the service charges without contractual authorization. (FAC, ¶¶39-86).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I. Breach of Contract[2]

The elements of a breach of contract claim under Missouri law are: "'(1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Teets v. American Family Mut. Ins. Co.*, 272 S.W.3d 455, 461 (Mo. Ct. App. 2008) (quoting *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)). To state a claim for breach of contract, however, a plaintiff need only plead facts sufficient to demonstrate the existence of a

---

[2] The Court does not address the parties' arguments regarding whether Republic was a party to the contract or the alter ego theory of liability because the Court believes that Pietoso fails to state a claim against either Defendant.

valid contract and its breach. *Brion v. Vigilant Ins. Co.*, 651 S.W.2d 183, 185 (Mo. Ct. App. 1983); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055–56 (E.D. Mo. 2009)

The Service Agreement establishes that Allied could increase Pietoso's rate based upon increased costs incurred by Allied:

> Company [Allied] may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in: (a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customer's Waste Materials above the number of pounds per cubic yard upon which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) Company's costs due to changes in Applicable Laws.

Service Agreement, Rate Adjustments.

The Service Agreement also expressly states that Allied could increase Pietoso's fees for any other reason, with Pietoso's consent: "for reasons other than those set forth above with Customer's consent, which may be evidenced verbally, in writing or by the parties actions and practices." Service Agreement, Rate Adjustments.

Pietoso's breach of contract argument hinges on its claim that Defendants increased their service fee without Pietoso's knowledge or consent. *See, e.g*, Amended Complaint, ¶57 ("Plaintiff has never given its consent to any Optional Service Charge Increase, nor has Plaintiff ever given its consent to an Optional Service Charge."); Amended Complaint, ¶58 ("Plaintiff believed that the increases in the Service Charges were always Authorized Service Charge Increases when it paid its monthly invoices."); Amended Complaint, ¶59 ("Plaintiff was reasonable in its belief that the increases in the Service Charges were Authorized Service Charge Increases because the Service Agreement states that Defendants needed Plaintiff's consent to any Optional Service

Charge Increases, and Defendants never requested nor did Plaintiff ever grant such consent for any of the increases in the Service Charges.").[3]

Pietoso alleges that Defendants increased Pietoso's Service Charges for reasons other than Authorized Service Charge Increases. (FAC, ¶¶61-76). Pietoso alleged that any increases in Service Charges fell under the categories of charges that required Pietoso's consent. (FAC, ¶¶33-34). Pietoso notes that it never gave its consent to any such increases and believed that it was paying only Authorized Service Charge Increases as represented on monthly invoices. (FAC, ¶¶57-59).

Finally, Pietoso asserts that it could not have known the basis for Defendants' increased charges because such information was only available to Defendants. Pietoso claims "the records necessary to analyze the basis for Defendants' price increases, or Defendants' alleged belief that Pietoso consented to the price increases, are solely within the control of Defendants at this pre-discovery stage of the litigation." (ECF No. 28 at 7). Pietoso asserts that it has alleged the elements of a breach of contract claim by stating that Defendants increased their Service Charges for reasons not expressly authorized by the Service Agreement and without the consent of Pietoso. (ECF No. 28 at 8).

The Court finds that Pietoso fails to state a claim for breach of contract as a matter of law. The FAC demonstrates that Pietoso was aware of rate increases. Pietoso alleges it received invoices in advance of the due date showing the amounts it would owe for waste removal services for the next month. (FAC, ¶53). Payment for these invoices was not due for approximately twenty days. (FAC, ¶53). Pietoso, therefore, paid the increased rate on the invoices with full knowledge of the increased amount and with twenty days' notice of the increased rate. (FAC, ¶¶53, 58, 69,

---

[3]"Optional Service Charge Increases" is referenced in the FAC, ¶¶33-34.

109). In fact, Pietoso paid the increased rates, without challenge or question, for approximately 8 years. (FAC, ¶¶53, 58, 69, 109). Pietoso's continued payments belie its claim that it was unaware of the increases or that it did not consent to the increases. *See Kosher Zion Sausage Co. of Chicago v. Roodman's, Inc.*, 442 S.W.2d 543, 546 (Mo. App. 1969) ("a contractual relationship may arise without written or oral offer and acceptance, and does arise where the circumstances and the acts and conduct of the parties support a reasonable inference of a mutual understanding and agreement that one party perform and that the other party compensate for such performance") Indeed, Pietoso alleged that the rate increases were "regular," large, and conspicuous. (FAC, ¶¶46, 67; ECF No. 28 at 11). The Court holds that Pietoso accepted the increased rates from Defendants ("The increases in Service Charges were material and significant in amount").

The cases cited by Pietoso do not support its claim that the records necessary to analyze the basis for Defendants' price increases are solely within the control of Defendants. For example, *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017) involved the pleading requirements for a Section 1983 action when "many of the relevant facts here are known only to the defendant". But, as previously discussed, Peitoso was aware of and accepted the increased charges from Defendants. Likewise, *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) involved the pleading requirements where "a man [was] badly injured by a switched track and shortly thereafter hit and dragged under the train." His employer "likely made its own investigation which, if not privileged, could easily reveal just what its employees saw between the switch accident and the denouement." Conversely, Pietoso has not alleged Defendants performed any investigation or otherwise have material information solely in their possession. Finally, *Resolution Tr. Corp. v. Fiala*, 870 F. Supp. 962, 971 (E.D. Mo. 1994) determined "that the business judgment rule is a

fact-bound affirmative defense that does not provide a basis for dismissal under Rule 12(b)(6)," but the business-judgment rule is not at issue in this case.

Rather, unlike the cases cited by Pietoso, this case involves two business entities who had an established business relationship involving regular billing cycles and payment. Pietoso knew and paid Defendants' invoices, which reflected the relevant rate increases, for eight years. Pietoso has not alleged that these rate increases were concealed, that it had insufficient time to investigate the rate increases before paying the invoices, or that they were prevented by Defendants from investigating these rate increases. Finally, Pietoso did not withhold payment for the increases, which indicates its acceptance of those increases. Pietoso, therefore, cannot state a plausible claim for relief and the Court grants the motion to dismiss Pietoso's breach of contract claim.

## II.   Declaratory Judgment

In order to maintain an action for declaratory judgment, plaintiff must present (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;" (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law. *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. 2003) (quoting *Northgate Apartments, L.P. v. City of North Kansas City*, 45 S.W.3d 475, 479 (Mo. App. 2001)); *Thompson v. City of St. Peters*, 220 F. Supp. 3d 975, 984 (E.D. Mo. 2016). "Absent exceptional circumstances plainly appearing, a trial court may not use the Declaratory Judgment Act when an adequate remedy at law exists." *Cincinnati Casualty. Co. v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. App. E.D.

2005). "When a declaratory judgment claim improperly invokes § 527.010 because an adequate remedy already exists, that declaratory judgment claim fails to state a cause of action." *Shelter Mut. Ins. Co. v. Vulgamott*, 96 S.W.3d 96, 103 (Mo. App. W.D. 2003); *Payne v. Cunningham*, 549 S.W.3d 43, 48 (Mo. Ct. App. 2018)

Pietoso's claim for declaratory judgment is based upon its allegations that it was charged fees unauthorized under the Service Agreement. Thus, the Court holds that Pietoso's claim for declaratory judgment must be dismissed because it is based upon the purported breach of the Service Agreement. "It is well-settled that declaratory relief is not proper where the 'real cause of action is an action at law for breach of contract.'" *Century Motor Corp. v. FCA US LLC*, 477 S.W.3d 89, 96 (Mo. Ct. App. 2015) (citing *Love Mortg. Props., Inc. v. Horen*, 639 S.W.2d 839, 841 (Mo. Ct. App. 1982)); *see also Cincinnati Cas. Co. v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. Ct. App. 2005) ("A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract."); *Goldfinch Enters., Inc. v. Columbia W, L.P.*, 159 S.W.3d 866, 867 (Mo. Ct. App. 2005) (trial court correctly refused to grant the plaintiff a declaratory judgment because the plaintiff's "dual action for declaratory judgment and for breach of contract was mutually exclusive."). Therefore, the Court dismisses Pietoso's declaratory judgment claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED** for failure to state a claim.

An appropriate Judgment is filed herewith.

Dated this 15th day of January, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**