UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PIETOSO, INC. d/b/a CAFÉ NAPOLI, individually and on behalf of those similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. 4:19-CV-00397-JAR |
| REPUBLIC SERVICES, INC. & ALLIED SERVICES, LLC d/b/a ALLIED WASTE SERVICES OF BRIDGETON, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants Republic Services, Inc. ("Republic") and Allied Services, LLC ("Allied"). (Doc. 50). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be denied.

**I.   BACKGROUND**

Plaintiff Pietoso, Inc. ("Pietoso") operates Café Napoli, a restaurant in Clayton, Missouri. On or about April 26, 2011, Pietoso executed a Customer Service Agreement ("Service Agreement") with Allied for waste removal from the restaurant. (Doc. 49-1). The Service Agreement established a basic-service rate of $323 per month for trash pickup four times per week. The Service Agreement also included a "Rate Adjustment" provision, which provided that Allied could increase this rate at any time for five enumerated reasons ("Unilateral Reason") or for any other reason, but in that case only with Pietoso's consent ("Optional Reason"). (*Id.* at 2).

Between April 2011 and August 2018, the basic-service rate charged to Pietoso incrementally increased from $323 per month to $870.25 per month. (Doc. 49 at ¶ 65). Defendants

1

never explicitly indicated whether the increases were for a Unilateral Reason or Optional Reason; the "Total Amount Due" on the invoices simply went up. (*Id.* at ¶¶ 48-49). In early 2019, after Pietoso complained about yet another rate increase, Defendants offered to reduce the monthly charge to $280, below the initial price set in 2011. (*Id.* at ¶¶ 69-70). Suspecting that Defendants had been improperly raising the price without obtaining their customers' consent, Pietoso terminated the Service Agreement (*Id.* at ¶ 73) and commenced this putative nationwide class action.

Defendants moved to dismiss Pietoso's First Amended Complaint primarily on the grounds that Pietoso's "acceptance and payment of those [optional] price increases for eight years[] undeniably evidence its consent to the increasing service fees." (Doc. 24 at 10). This Court, Judge Ronnie White presiding,[1] agreed, holding that "Pietoso's continued payments belie its claim that it was unaware of the increases or that it did not consent to the increases." (Doc. 31 at 5). Pietoso appealed, and the Eighth Circuit reversed and remanded, finding it "cannot conclude at this stage that Pietoso's invoice payments manifested its consent to paying Optional Reason increases." *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 624 (8th Cir. 2021). Pietoso has now filed a Second Amended Complaint ("SAC") (Doc. 49) which includes the following counts:

Count I: Breach of Contract

Count II: Breach of Covenant of Good Faith and Fair Dealing

Count III: Fraud in the Inducement

Pietoso has also made class action allegations. (*Id.* at ¶¶ 178-189). Defendants seek to dismiss the entire SAC with prejudice. (Doc. 50).

---

[1] Judge White recused himself from this case pursuant to 28 U.S.C. § 455 on August 3, 2021. (Doc. 47). The case was reassigned to this Court the same day. (Doc. 48).

2

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). When ruling on a motion to dismiss under Rule 12(b)(6), the district court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## III. DISCUSSION

<u>Claims Against Republic</u>

Pietoso and Allied entered the Service Agreement in April 2011. Allied merged into Republic in December 2008 and operates as a subsidiary or affiliate of Republic. (Doc. 49 at ¶ 8). Defendants argue that Pietoso lacks any contractual relationship with Republic and accordingly has no plausible claim for relief against Republic. (Doc. 54 at 1-5).[2] Pietoso responds that Republic

---

[2] This Court previously declined to consider this argument because it was rendered moot by the dismissal of this action with prejudice for failure to state a breach of contract claim. (Doc. 37 at 2 n.2).

3

may have assumed Allied's liabilities via the merger and, alternatively, Pietoso can pierce Republic's corporate veil because Allied "appears to be a shell company." (Doc. 52 at 3).

"Under Missouri law, there is a presumption of corporate separateness, and courts do not lightly disregard the corporate form to hold a parent company liable for the torts of a subsidiary." *Iridex Corp. v. Synergetics USA, Inc.,* 474 F. Supp. 2d 1105, 1109 (E.D. Mo. 2007) (citation omitted). Therefore, "[a] wholly owned subsidiary is generally treated as a separate entity." *Id.* (citation omitted); *see also Mid-Missouri Tel. Co. v. Alma Tel. Co.,* 18 S.W.3d 578, 582 (Mo. Ct. App. 2000). "Of course, where circumstances exist that would allow the wronged party to pierce the corporate veil, a parent corporation could then incur liability, thus losing the parent/subsidiary distinction." *Mid-Missouri Telephone Co.,* 18 S.W.3d at 582 (citation omitted). Missouri courts will "pierce the corporate veil" when a plaintiff can establish (1) control, including "complete domination . . . in respect to the transaction attacked," (2) that such control was used to commit fraud or wrong, perpetuate violation of a statutory or other legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights, (3) and that the control and breach proximately caused the applicable injury or unjust loss. *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc.,* 552 F. Supp. 2d 952, 955 (E.D. Mo. Dec.13, 2007) (citations omitted); *see also Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992).

Pietoso has alleged that "Republic completely controls and dominates Allied's performance in connection with the Service Agreement" and Republic merely "operates and controls Allied as a shell company." (Doc. 49 at ¶ 190). More specifically, Pietoso claims that Republic handles all negotiations, customer inquiries, and record-keeping regarding the Service Agreement, and that at some point Republic became the payee on the standard invoice. (*Id.* at ¶¶ 39-41, 191; Doc. 49-2). When Pietoso complained about the increased basic-service rate in 2019,

4

it negotiated with and received a revised quote from Republic representatives. (*Id.* at ¶¶ 69-71; Doc. 52 at 3). Pietoso also alleges that Republic and Allied share common management, corporate offices, and headquarters. (*Id.* at ¶ 191(g-h)).

Under these circumstances, and at this early stage of litigation, the Court finds that Pietoso has plausibly alleged alter ego liability against Republic. Determining whether Republic may be held liable under an alter ego theory requires a fact-intensive inquiry that cannot be resolved at the motion to dismiss stage in this case. *See Cass Com. Bank v. Cap. Tech. & Leasing, LLC*, No. 4:14-CV-307 RWS, 2015 WL 4775102, at *3 (E.D. Mo. Aug. 13, 2015) (citation omitted) (finding alter-ego inquiry is fact-intensive and "should normally not be disposed of by summary judgment"). While Defendants cite multiple cases where courts in this district have dismissed alter ego claims at the pleadings stage, such case are easily distinguished by the respective plaintiffs' failure to make the necessary allegations to support an alter ego claim. *See, e.g.*, *Nestle Purina Co. v. Blue Buffalo Co. Ltd.*, No. 4:14-CV-859-RWS, 2016 WL 5390945, at *6 (Plaintiff's alter ego claim "fails because it never alleges that the Individual Defendants themselves controlled anything other than Diversified's finances."). Because Pietoso has plausibly alleged the necessary elements of an alter ego claim, the Court will not dismiss Republic from the action.

Statute of Limitations

Defendants contend that this Court must dismiss Pietoso's contract claims predating March 2014 because they are time-barred by Missouri's five-year statute of limitations. M̲o̲. R̲e̲v̲. S̲t̲a̲t̲. § 516.120(1). Pietoso responds that, pursuant to Missouri's tolling statute, M̲o̲. R̲e̲v̲. S̲t̲a̲t̲. § 516.100, its cause of action did not begin running until damages became capable of ascertainment and Pietoso suffered its last item of damage. (Doc. 52 at 14).

5

Bar by a statute of limitations is an affirmative defense. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); Fed. R. Civ. P. 8(c). A defendant does not render a complaint defective by pleading an affirmative defense, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), and therefore the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1017-18 (8th Cir. 2004) (dismissal proper because complaint ruled out tolling of statute of limitations); *see also Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

Pietoso's complaint does not necessarily establish application of the statute of limitations to bar claims relating to Defendants' conduct prior to March 2014. Under Missouri law, the statute of limitations does not begin to run "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. "This test is an objective one, providing that an injury is capable of ascertainment when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 764–65 (8th Cir. 2020) (quoting *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006) (en banc)), *cert. denied*, No. 20-1008, 2021 WL 1521013 (U.S. Apr. 19, 2021).

Accepting Pietoso's allegations as true and drawing all reasonable inference in its favor, it is plausible that Pietoso's injuries were not capable of ascertainment until 2019 when Pietoso suspected that Defendants were baking Optional Reason price adjustments into the Total Amount Due on each invoice. Furthermore, Pietoso has reasonably claimed that it did not suffer its "last item" of damage under Mo. Rev. Stat. § 516.100 until the final invoice from Defendants in 2019. *See Pipeline Prods., Inc. v. S&A Pizza, Inc.*, 2020 WL 5043045, at *2 (W.D. Mo. Aug. 26, 2020) (Declining to dismiss claims based on 2008 agreement "[b]ecause S&A alleges continued

6

wrongdoing, including in the years of 2018 and 2019, [and therefore] the applicable statute of limitations has not run."); *Royal Forest Condo. Owners' Ass'n v. Kilgore*, 416 S.W.3d 370, 375 (Mo. Ct. App. 2013) (finding statute did not run in case concerning monthly condominium fees until date of "last alleged damage, which was the final fee credit"). Accordingly, Pietoso's claims concerning Defendants' conduct prior to March 2014 do not necessarily fail as a matter of law.

Count I – Breach of Contract

Under Missouri law, a breach of contract claim has four elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)). The core question on the breach of contract claim is whether Pietoso consented to Optional Reason price increases by continuing to pay the invoiced price. If Pietoso did not consent-by-conduct, Defendants appear to have breached the Service Agreement by imposing the Optional Reason price increases without obtaining consent.

In reversing this Court, the Eighth Circuit repeatedly emphasized that assessing consent-by-conduct ordinarily requires consideration of all relevant circumstances by the trier of fact. *Pietoso*, 4 F.4th at 623 (citations omitted). Indeed, the court expressed some skepticism as to whether consent-by-conduct issues can ever be resolved at the pleading stage. *Id.* ("Even assuming that there are cases where the consent-by-conduct question can be resolved at the pleading stage, this is not one of them."). Considering this clear guidance, Defendants' motion faces an uphill battle on this issue.

7

After the Eighth Circuit's decision, Pietoso amended its complaint. The SAC includes references to language on Republic's website relating to Service Interruption Fees and Late Payment Fees. (Doc. 49 at ¶¶ 110-114). Defendants contend that additional language on the same page of its website firmly demonstrates that Pietoso consented to the Optional Reason increases. (Doc. 51 at 12-13). Before considering the specific language, the Court believes that Defendants' argument presents clear questions of fact inappropriate for resolution at the motion to dismiss stage. In particular, the Court lacks meaningful detail regarding the timing of any changes to Republic's website (Doc. 52 at 12 n.2) and the extent of Pietoso's knowledge of this content.

Regardless, the language cited by Defendants cannot overcome the Eighth Circuit's firm guidance. The Republic website includes the following section titled "Rate Increases":

> Throughout the course of providing your service, Republic Services may increase your rates for service. Rate increases are necessitated over time to keep up with increasing costs of operations and to ensure Republic Services is maintaining an acceptable operating margin and/or an acceptable rate of return on its investment in the services provided. Republic Services reserves the right to determine in its sole discretion the amount of all rate increases. **If your service is subject to a written contract (or other written agreement applicable to your service), your rate increase will comply with any limitations set forth in such contract, if any. Republic Service will provide prior notice of any rate increases, which notice may be in the form of a change on your invoice.** *Republic Services, Understanding Our Rates, Charges, and Fees: Rate Increases*, http://www.republicservices.com/customer-support/fee-disclosures (last accessed November 8, 2021) (emphasis added).

Simply put, this language is of limited relevance at this juncture. The website specifically states that rate increase "will comply with any limitations set forth" in the Service Agreement. The Service Agreement is fully integrated (Doc. 49-1 at 2) ("This Agreement sets forth the entire agreement of the parties."), meaning it "may not be varied or contradicted by evidence of extrinsic agreements," and "any extrinsic evidence must be ignored." *Johnson ex rel. Johnson v. JF Enters.,*

*LLC*, 400 S.W.3d 763, 769 (Mo. banc 2013) (citation omitted).[3] In these circumstances, and despite the language on Republic's website, Pietoso's breach of contract claim continues to present fact-intensive questions concerning the issue of consent-by-conduct inappropriate for resolution at this early stage of litigation.

### Count II – Breach of Covenant of Good Faith and Fair Dealing

Defendants argue that Count II, alleging breach of the covenant of good faith and fair dealing, must be dismissed because the Service Agreement expressly governs questions of Pietoso's consent and the implied covenant of good faith and fair dealing cannot give rise to obligations not otherwise contained in the plain language of a contract. Pietoso responds that it can plead Count II in the alternative and Defendants "have formatted their invoices to deceive customers into paying optional charges which do not have to be paid." (Doc. 52 at 6).

The good faith requirement imposed by law on every contract extends "to the manner in which a party employs discretion conferred by a contract." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (applying Missouri law). "To establish a breach of the covenant of good faith and fair dealing, the plaintiff has the burden to establish that the defendant 'exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract.'" *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 853–54 (8th Cir. 2020) (quoting *Kmak v. Am. Century Cos., Inc.*, 754 F.3d 513, 516 (8th Cir. 2014)).

---

[3] Extrinsic evidence cannot be used to supplement or contradict terms in the Service Agreement. The Court recognizes, however, that extrinsic evidence – such as the language on Republic's website – may be relevant and admissible when assessing "all relevant circumstances" relating to the consent-by-conduct question. *Pietoso*, 4 F.4th at 623. At this juncture, the website language alone does not warrant a ruling on the consent-by-conduct issue as a matter of law.

9

The covenant cannot give rise to new obligations not otherwise contained in a contract's express terms. *See Glass v. Mancuso,* 444 S.W.2d 467, 478 (Mo. 1969). To show a breach of this duty, however, Pietoso need not show it is contractually entitled to expressly consent to Optional Reason price increases. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 (8th Cir. 2002). "Rather, [Plaintiff] merely needed to present evidence tending to demonstrate that [Defendant] exercised its discretion so as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." *Id*. (quoting *Amecks, Inc. v. Southwestern Bell Tel. Co.,* 937 S.W.2d 240, 243 (Mo. Ct. App. 1996)).

Pietoso alleges Defendants violated the duty of good faith and fair dealing by exercising their discretion to format invoices so as to undermine Pietoso's ability to reject Optional Reason price increases. Although the Service Agreement does not expressly require Defendants to inform Pietoso that an increase is optional, Defendants are nevertheless required to make discretionary decisions in good faith. Because Pietoso has plausibly alleged that Defendants exercised their discretion in bad faith so as to deprive Pietoso of its contractual rights, the motion to dismiss will be denied as to Count II.

Count III – Fraud in the Inducement

In Count III, Pietoso alleges that Defendants fraudulently induced it into consenting to Optional Reason price increases. (Doc. 49 at ¶¶ 147-177). Pietoso specifically pleads this claim as an "additional or alternative cause of action" to its other claims. (*Id.* at ¶ 172). Defendants seek dismissal on the grounds that Pietoso's fraudulent inducement claim lacks merit and fails to meet the pleading requirements under Fed. R. Civ. P. 9(b). (Doc. 51 at 9-12).

Defendants primarily contend that Pietoso has not identified any misrepresentation, which is a necessary element of a fraudulent inducement claim under both Missouri law and Rule 9(b).

10

*See Bracht v. Grushewsky*, 448 F. Supp. 2d 1103, 1110 (E.D. Mo. 2006). Pietoso responds that Defendants repeatedly increased the Total Amounts Due on their invoices, and each such invoice constituted a contract modification based on a misrepresentation as to the nature of the price increase. Pietoso's argument is buttressed by the fact that the invoice specifically threatened late payment fees and cancellation of service if Pietoso did not pay the Total Amount Due, despite the supposedly optional nature of the price increases. This Court finds that Pietoso has plausibly alleged that such statements by Defendants misrepresented the amount Pietoso was contractually obligated to pay.

Defendants ask this Court to apply the heightened pleading standards of Rule 9(b) to dismiss Pietoso's fraudulent inducement claim. Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the "circumstances constituting fraud," *id*., including "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982). For the same reasons discussed above, this Court holds that Pietoso has alleged specific misrepresentations – increases in the Total Amount Due and associated threats of late payment fees and cancellation of service – to support its fraudulent inducement claim. *See Nestle Purina PetCare Co. v. Blue Buffalo Co*., No. 4:14-CV-859 RWS, 2015 WL 1782661, at *11 (E.D. Mo. Apr. 20, 2015) (finding Rule 9 satisfied by "quite general" allegations

11

Case: 4:19-cv-00397-JAR   Doc. #:  58   Filed: 11/08/21   Page: 12 of 13 PageID #: 384

that defendants "knew that their published statements were false, or acted in reckless disregard [or negligence] of the truth or falsity of the statements.").

Finally, Defendants argue that Pietoso's claims sound in contract. As indicated above, however, Pietoso has explicitly pled Count III as an "additional *or alternative*" claim. (Doc. 49 at ¶ 172) (emphasis added). A factfinder could determine, for example, that Pietoso consented to the Optional Reason price increases by its conduct but was fraudulently induced into providing such consent. Regardless, this Court also finds that Pietoso may bring claims for both breach of the Service Agreement and fraudulent inducement into modifying the Service Agreement because they may constitute violations of distinct duties. *See Elkhart Metal Fabricating, Inc. v. Martin*, No. 14-CV-705 JCH, 2014 WL 2972709, at *2 (E.D. Mo. July 1, 2014) ("The duty not to fraudulently or negligently make factual misrepresentations to induce another person to form a contract is a duty that exists independently of any contractual obligations ultimately formed.").[4] Therefore, the motion to dismiss will be denied as to Count III.

## IV.   CONCLUSION

For the reasons set forth above, the Court concludes that Pietoso has adequately pled its claims against both Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 50) is **DENIED**.

---

[4] Defendants have not specifically invoked the economic loss doctrine, which prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature, but they have effectively made the identical argument. *See Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014). For the same reasons discussed in this Court's decision in a related case concerning the same underlying issues and Defendants as here, the Court finds that the economic loss doctrine does not bar Pietoso's fraudulent inducement claim. *CIS Commc'ns, LLC v. Republic Servs., Inc.*, No. 4:21-CV-359-JAR, 2021 WL 4709747, at *4-5 (E.D. Mo. Oct. 8, 2021).

12

Dated this 8th day of November, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE